**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,



REPORT AND
RECOMMENDATION
12-CR-6018

v.

JOSEPH SCHMIDT,

        Defendant.

## Preliminary Statement

By text Order of Judge Charles J. Siragusa, dated February 13, 2012, all pre-trial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). Currently pending before the Court are motions by defendant Joseph Schmidt to suppress evidence found pursuant to five separate search warrants. (Dockets ## 11, 12). The Government has filed papers in opposition to these motions. (Docket # 14). On May 1, 2012, a hearing was held and oral arguments were heard from both Government and defense counsel. The Court reserved decision on defendant's motions to suppress evidence found pursuant to the five search warrants. The following is my Report and Recommendation as to the defendant's motions.

## Factual Background

In June 2011, investigators with the Drug Enforcement Administration ("DEA") and the Greater Rochester Area Narcotics

Enforcement Team ("GRANET") began investigating defendant Joseph Schmidt for alleged drug trafficking activities. Officers received information from an anonymous source that Schmidt was growing marijuana inside his home at 598 Culver Parkway in Irondequoit, New York. Further investigation revealed that Schmidt owned two residences in Monroe County – the Culver Parkway home and another residence located at 48 Crystal Valley Overlook in Henrietta, New York. Thereafter, local law enforcement sought and obtained four separate search warrants for the homes belonging to Schmidt. First, on June 29, 2011, law enforcement applied for permission to utilize a Forward Looking Infrared Thermal Imaging Device ("FLIR") to obtain thermal imaging data regarding both of Schmidt's residences. Then, on July 12, 2011, after the results of the FLIR were obtained, law enforcement sought and obtained search warrants for the residences themselves. All four search warrants were reviewed and signed by Monroe County Court Judge Frank P. Geraci, Jr. A fifth search warrant was issued by the undersigned on August 1, 2011 when I authorized a search of a Blackberry Tour cell phone seized from Schmidt during the course of his July 20, 2011 arrest on federal narcotics charges.

Schmidt seeks to suppress the evidence seized from all five search warrants. His motion papers in support of suppression are not particularly focused; rather he raises in fairly broad brush and conclusory fashion various alleged defects in the warrants,

including lack of probable cause "to believe the residences were connected to criminal activity," improper reliance on an anonymous letter, lack of criminal history information about Schmidt, lack of actual first hand observation of any marijuana grow operation in either residence and the use of misleading information regarding the results of the FLIR search warrants. In addition, Schmidt makes a demand for a "Hearing pursuant to Franks v. Delaware, 488 U.S. 154 to determine whether the facts in the Search warrant had proper foundation for the statements therein." See Affirmation of Michael P. Schiano, Esq. annexed to Docket # 11 at p. 7.

## Discussion

Before turning to the merits of Schmidt's arguments, the Court reviews the applicable legal standards under the Fourth Amendment. First, search warrants may only be issued upon a showing of probable cause. "To establish probable cause to search a residence, two factual showings are necessary-first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983)(concluding that a search warrant issued for a stolen car and the house it was parked in front of was proper because there was a fair probability that the house would contain some stolen goods from the car). A "magistrate's finding of probable cause is itself a substantial

factor tending to uphold the validity of this warrant." Id.; see also United States v. Ventresca, 380 U.S. 102, 106 (1965)(holding that a magistrate's disinterested finding of probable cause based on reasonable inferences is given preference). Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Ponce, 947 F.2d 646, 650 (2d Cir. 1991)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The process does not deal with hard certainties, but with probabilities." Gates, 462 U.S. at 230; see also United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir. 1985)("Probable cause to believe certain items will be found in a specific location . . . need not be based on direct, first-hand, or 'hard' evidence.")(internal citation omitted).

Second, where a defendant challenges the accuracy of representations in a warrant application, he must demonstrate by a preponderance of the evidence "(1) that the inaccuracies were the product of a Government agent's 'deliberate falsehood' or 'reckless disregard for the truth' rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause." United States v. Coreas, 419 F.3d 151, 155 (2d Cir. 2005)(quoting Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

4

As set forth below, the warrants at issue here were properly authorized and in compliance with the requirements of the Fourth Amendment.

1.  The FLIR Warrants: In Kyllo v. United States, 533 U.S. 27 (2001), the Supreme Court held that law enforcement's use of a thermal imaging device to measure the radiation of heat from a person's home was a "search" within the meaning of the Fourth Amendment and thus must, absent an exception, be conducted pursuant to a search warrant based on probable cause.  Here, the supporting affidavit of Monroe County Sheriff Deputy Michael Mann informed Judge Geraci that nine days before the warrant was sought, law enforcement received information in a letter from an anonymous source that an individual named Raymond Lanni was operating a marijuana grow operation in the basement of his residence located at 54 Kittleberger Park, Webster, New York.  The anonymous source told the officers that Lanni was harvesting the marijuana and selling it to Joseph Schmidt, who was also operating a smaller marijuana grow operation at his residence located at 598 Culver Parkway, Irondequoit, New York.  The letter contained various specifics, indicating the author knew Schmidt and Lanni.  For example, the letter accurately identified the approximate age of Schmidt (30 years old); that Lanni repeatedly bragged about his grow operation business; that the writer's daughter had seen marijuana plants in the basement of Lanni's home and that Schmidt

"had a similar set up in his own basement." After receiving the letter, Investigators confirmed the addresses of Raymond Lanni and Joseph Schmidt and served subpoenas on Rochester Gas & Electric ("RG&E") for the electricity records of the residences they owned. The RG&E electricity records for the 54 Kittleberger Park residence owned by Lanni and the 598 Culver Parkway and 48 Crystal Valley Overlook, Henrietta, New York addresses owned by defendant Schmidt indicated an unusually high amount of electricity usage as compared to similarly sized residences in their respective vicinities.

Schmidt complains about the use of an "anonymous tip" to justify the search. His complaint is without merit. Information needed to satisfy the probable cause standard may be supplied by an anonymous tip. In Illinois v. Gates, 462 U.S. 213 (1983) the Supreme Court instructed that judges must look at the "totality of the circumstances" in making probable cause determinations and reaffirmed that it was proper for a court to consider anonymous sources in making that determination. Anonymously supplied information can be a factor supporting probable cause where the information is "sufficiently corroborated." See United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007). The Second Circuit has instructed that

> in assessing the totality of the circumstances we also evaluate whether the information an informant provides is corroborated by independent police investigation, because an informant who is right about some facts is more likely to be right about others. We consider such corroboration in evaluating the existence of probable cause even if

6

only an informant's account of anticipated innocent activities is confirmed.

United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004)(internal citations omitted).

Here, I find that the "totality of circumstances" described in Deputy Mann's affidavit satisfies the probable cause standard needed for proper issuance of warrants seeking to perform a thermal image analysis on the two residences owned by Schmidt. The anonymous letter clearly set forth detailed allegations about illegal conduct being conducted out of Schmidt's residence in Rochester. The affidavit also informed Judge Geraci about the efforts Deputy Mann made to corroborate the anonymously supplied information, including confirming that Schmidt did own 598 Culver Parkway and 48 Crystal Valley Overlook in Henrietta, that Schmidt was approximately thirty years old, and that RG&E usage reports for both of Schmidt's properties confirmed unusually high electrical consumption that was consistent with an indoor marijuana grow operation. Based on this information, it was proper for Judge Geraci to issue warrants authorizing an external thermal imaging analysis of 598 Culver Road and 48 Crystal Valley Overlook. For these reasons, it is my Report and Recommendation that the defendant's motion to suppress the FLIR warrants be **denied**.

2. Search of 598 Culver Road and 48 Crystal Valley Overlook: Upon obtaining the FLIR search warrants, Air Interdiction Agent James Pridgen, operating a United States Customs aircraft,

7

performed an overhead FLIR imagery on all three residences. The results of the FLIR imagery revealed that Lanni's 54 Kittleberger Park residence did <u>not</u> emit significant thermal emissions when compared to surrounding structures. As a result, the investigators did not apply for a search warrant to search Lanni's residence. However, as for the two residences owned by defendant Schmidt, the FLIR imagery revealed significantly heightened heat signatures on each of the two residences as compared to surrounding structures. The results of Agent Pridgen's FLIR testing was incorporated into an affidavit in support of the search warrants. In addition to the Pridgen affidavit, Deputy Mann also submitted an affidavit restating the contents of the anonymous letter, his corroboration of the information in the letter, and the fact that he had reviewed a video of the FLIR analysis and "based on his training and experience with indoor marijuana grow operations," the significant variance in thermal energy found within 598 Culver Road and 48 Crystal Valley Overlook with thermal energy readings obtained from surrounding structures "would be consistent with a home using high intensity lamps and equipment to grow marijuana indoors."

As with the FLIR warrant applications, I find the data and information submitted to Judge Geraci in support of the warrants for the two residences to satisfy the probable cause standard. Indeed, the FLIR warrant results only served to further corroborate the allegations of criminal conduct set forth in the anonymous

letter. Based on the totality of circumstances, probable cause existed to believe that Schmidt was operating a marijuana grow operation and that evidence thereof would be found inside 598 Culver Road and 48 Crystal Valley Overlook. Accordingly, it is my Report and Recommendation that Schmidt's motion to suppress the evidence seized from 598 Culver Road and 48 Crystal Valley Overlook be **denied**.[1]

3. <u>Search Warrant for the Blackberry Cellular Telephone</u>:

On July 20, 2011, defendant Schmidt was arrested pursuant to an arrest warrant issued by Hon. Marian W. Payson. At the time of defendant's arrest, he was carrying a Blackberry TOUR Verizon cellular telephone on his person, which officers seized incident to his arrest. The arresting agent, DEA Agent William MacMillan, performed a cursory review of defendant's cell phone incident to his arrest. <u>See</u> Affidavit of William MacMillan attached as an Exhibit to Docket # 14. During his review of the cell phone, Agent MacMillan observed that the cell phone "had numerous text messages and emails, a directory of contacts and other standard features" and MacMillan "recognized several of the phone numbers listed in

---

[1] As to Schmidt's demand for a "<u>Franks</u> hearing," I find that defendant has clearly not made the required showing necessary to warrant such relief. Put simply, Schmidt has not established that the warrant affidavits include any false statements, let alone that any inaccuracies were the product of a Government agent's "deliberate falsehood" or "reckless disregard for the truth." <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 171-72 (1978). Accordingly, I conclude that defendant is not entitled to a <u>Franks</u> hearing.

the directory, as those same telephone numbers have been recorded pursuant to a federal pen register, authorized by the Hon. Marian W. Payson in June 2011, pertaining to a separate narcotics investigation currently being handled by" MacMillan. Id. MacMillan averred that based upon his training and experience it is his "belief that the two investigations may be related in some way," as "cellular phones and smartphone communication applications, specifically Blackberry messaging, Email, and Skype, are commonly used by traffickers to communicate with one another to further their business." Id. MacMillan opined that "the phone likely contains numbers and names of criminal associates that will further the investigation." Id. As a result, MacMillan averred that "probable cause exists" to believe that defendant's cellular phone "contains information that constitute records, fruits, instrumentalities, or evidence of a crime" involving, *inter alia*, possession of marijuana. Id. Agent MacMillan applied for a search warrant for defendant's Blackberry TOUR cellular telephone, and on August 1, 2011, the undersigned issued a search and seizure warrant for same. See Application for Search Warrant attached as Exhibit to Docket # 14; Search and Seizure Warrant attached as Exhibit to Docket # 14.

Schmidt moves to suppress evidence seized pursuant to the search warrant to search his Blackberry cellular telephone. He maintains that the arresting officers unlawfully reviewed the

contents of his cell phone after he was arrested, and then applied for and received a search warrant after they had already reviewed the cell phone's contents. See Schiano Aff. at p. 7. Defendant argues that the search warrant "allowed an unconstitutional search and seizure" of evidence. Id. at p. 8.

"[P]olice officers may conduct a warrantless search of an individual's personal property if the search is incident to a lawful custodial arrest." United States v. Valentine, 539 F.3d 88, 96 (2d Cir. 2008). The Government claims that it is "well-settled" that a warrantless search of a defendant's cellular telephone is lawful as a search incident to a lawful arrest. See Government's Response in Opposition (Docket # 14) at p. 23. The Government does not cite to Supreme Court or Second Circuit precedent for its "well settled" law claim. It is true that some circuits have upheld such cell phone searches as proper. See United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009)(pursuant to the search incident to arrest exception, "officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest"); United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007)(no warrant required where search of cell phone was incident to valid arrest); United States v. Ortiz, 84 F.3d 977, 983-84 (7th Cir. 1996)(allowing officer's scan of messages in digital pager as valid search incident to arrest). However, in the view of this Court, the law in this area is far from "well settled." Though not

11

cited by the defendant or disclosed by the Government, other courts have rejected a warrantless search of a cell phone as a legitimate part of a search incident to arrest. See United States v. Quintana, 594 F. Supp. 2d 1291, 1298-99 (M.D. Fla. 2009)(concluding search of defendant's cell-phone was not justified as search incident to valid arrest); United States v. McGee, No. 8:09CR31, 2009 WL 2424104, at *1-2 (D. Neb. July 21, 2009)("the phone did not present a risk of harm to officers or appear to be contraband or destructible evidence; and therefore, officers were not justified in conducting a warrantless search of the cell phone incident to [defendant's] arrest"); United States v. Park, No. CR 05-375 SI, 2007 WL 1521573, at *9 (N.D. Cal. May 23, 2007)(same); see also Schlossberg v. Solesbee, No. 10-6014-TC, 2012 WL 141741, at *4 (D. Ore. Jan. 18, 2012)("[B]ecause an electronic device like a camera has a high expectation of privacy in its contents, an officer may not review the contents as a search incident to arrest."). See generally Charles E. MacLean, But, Your Honor, a Cell Phone is not a Cigarette Pack: An Immodest Call for a Return to the Chimel Justifications for Cell Phone Memory Searches Incident to Lawful Arrest, 6 Fed. Cts. L. Rev. 37 (2012); Chelsea Oxton, Note, The Search Incident to Arrest Exception Plays Catch Up: Why Police May No Longer Search Cell Phones Incident to Arrest Without a Warrant, 43 Creighton L. Rev. 1157 (2010); J. Patrick Warfield, Note, Putting a Square Peg in a Round Hole: The Search-Incident-to-Arrest

12

Exception and Cellular Phones, 34 Am. J. Trial Advoc. 165 (Summer 2010).

Under the facts presented here, the Court need not come down on one side or the other of this contemporary Fourth Amendment issue. For, it is indeed "well settled" that "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid." United States v. Karo, 468 U.S. 705, 719 (1984). Here, assuming *arguendo* that it was improper for Agent MacMillan to perform a warrantless search of the Blackberry cell phone, the "tainted" phone numbers he observed during that search were tangential at best to a finding of probable cause. The rest of the information contained in the MacMillan affidavit was untainted and included a description of the array of incriminating evidence of narcotics possession and distribution and firearm offenses found in both 598 Culver Parkway and 48 Crystal Valley Overlook. Based on the results of the two searches, as set forth in the MacMillan affidavit, there was ample probable cause to believe Schmidt was actively involved in the possession and distribution of illegal drugs and that his Blackberry cellular phone would contain evidence relevant to his illegal activities. For these reasons, it is my Report and Recommendation that Schmidt's motion to suppress the search of his cellular phone be **denied.**

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions to suppress (Dockets ## 11, 12) be **denied**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   July 9, 2012
         Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   July 9, 2012
         Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).